UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **MICHAEL GRANT** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Case No.: 3:23-cv-0825-LCB |
| | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **COMMISSIONER,** | ) |
| | |
| **Defendant.** | |

## MEMORANDUM OPINION & ORDER

Michael Grant filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and a copy of the administrative record. (Doc. 7). Both Grant and the Commissioner have fully briefed the relevant issues, and Grant's case is ripe for review. For the following reasons, the Commissioner's final decision is due to be affirmed.

**I.      Background**

Grant protectively filed an application for a period of disability and disability insurance benefits on February 10, 2021, alleging disability beginning November 27, 2019. The claim was denied initially on September 28, 2021, and

upon reconsideration on April 13, 2022. Grant then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 13, 2022. Grant testified at the hearing, as did an impartial vocational expert ("VE"). The ALJ subsequently issued an unfavorable decision. The Appeals Council denied Grant's request for review, and the ALJ's decision became the Commissioner's final decision. This lawsuit followed.

## II. The ALJ's decision

After the hearing, the ALJ issued a written opinion explaining her decision. (Tr. at 31-43). In issuing her decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. *See* 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Grant did not engage in substantial gainful activity during the

relevant time period. (Tr. at 33). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id*. If a claimant does not have a severe impairment, he is not disabled, and the inquiry ends. If he does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Grant had the following severe impairments: "lumbar degenerative disk disease, status post open reduction and internal fixation of a left upper arm fracture (June 2021), and status post left radial nerve neuropraxia (resolved)." (Tr. at 33), citing 20 CFR 404.1520(c).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found that Grant's impairments did not meet or equal any of the listed criteria. Specifically, the ALJ reviewed listings for musculoskeletal disorders and neurological disorders. (Tr. at 36). After reviewing the evidence,

the ALJ concluded that there was no evidence of medical findings that were the same or equivalent to any of the listed impairments. (Tr. at 37). Therefore, the ALJ proceeded to step four.

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"), and whether he has the RFC to perform the requirements of any past relevant work. 20 CFR 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Grant's case, the ALJ found that he had the residual functional capacity to perform a full range of sedentary work as defined in 20 CFR 404.1567(a) with limitations of occasional postural maneuvers; no climbing of ropes, ladders, or scaffolds; and he should avoid unprotected heights. (Tr. at 37). Given this RFC, the ALJ determined that Grant was able to perform his past relevant work as a food produce sales representative given that such work would not require Grant to perform work-related activities precluded by his RFC. (Tr. at 43). This finding was based in part on testimony from a vocational expert who testified at Grant's hearing.

Based on the findings above, the ALJ determined that Grant was not disabled as defined by the Social Security Administration. *Id.*

4

### III.   Standard of Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing (1) evidence of an underlying  medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Zuba-Ingram v. Commissioner of Social Security*, 600 Fed. Appx. 650, 656 (11th Cir. 2015), quoting *Booth v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

Further, if the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on his ability to work must be evaluated. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). When evaluating a claimant's statements regarding the intensity, persistence or limiting effects his symptoms, ALJs consider all the evidence, objective and subjective. 20 C.F.R. §§404.1529, 416.929. ALJs may consider the nature of the claimant's symptoms, the effectiveness of medication, a claimant's treatment, a claimant's daily activities, measures a claimant takes to relieve symptoms, and any conflicts between the claimant's statements and other evidence. 20 C.F.R. §§ 404.1529(c) (3)-(4), 416.929(c)(3)-(4).

## IV. Grant's Arguments

In his brief, Grant argues that the ALJ's decision regarding his RFC is not supported by substantial evidence.  Grant specifically challenges the ALJ's assessment of certain evidence, arguing that she mischaracterized evidence regarding the severity of his pain in violation of the Eleventh Circuit's pain standard, improperly evaluated his lifting and carrying abilities, and placed undue weight on his daily activities when determining his RFC.  The Court will address each in turn.

### A. The ALJ properly evaluated the evidence regarding the severity of Grant's pain.

In the section of her opinion addressing Grant's RFC, the ALJ acknowledged that his medically determinable impairments could reasonably be expected to produce the alleged symptoms. (Tr. at 39). However, she found his statements regarding their intensity, persistence, and limiting effects to be inconsistent with the medical and other evidence in the record. *Id.* Grant argues that this determination is not supported by substantial evidence because, he says, the ALJ "dismissed and mischaracterized significant objective evidence." (Doc. 11 at 7). He points first to the ALJ's statement that, although Grant had degenerative disc disease from at least 2003 to 2016, there was no change in the "'Grade 1 severity of anterolisthesis'" and that he successfully continued his longstanding employment for year "'with this condition.'" *Id.*, quoting (Tr. at 39). Grant interprets these findings as suggesting that his condition and associated pain were unchanged during that interval. However, Grant says, he testified and reported to doctors that his pain worsened and progressed over the years. *Id.* at 8, citing (Tr. 91, 94, 413, 418, 423, 428, 438, 449, and 454) He also cites to various imaging studies establishing a worsening of his condition. (Doc. 11 at 8), citing (Tr. 401 and 829). Grant claims that the ALJ ignored these studies or minimized their significance in arriving at her RFC finding.

7

The Court notes that the ALJ did not explicitly find that Grant's condition and associated pain remained unchanged since its onset. Rather, she stated that the Grade 1 severity of Grant's anterolisthesis was unchanged from 2003 to 2016. That statement is supported by the record. *See* (Tr. at 4, 20, and 22) (imaging reports showing Grade 1 anterolisthesis in 2003, 2011, and 2016). Similarly, the ALJ's findings about Grant's employment during that interval is established by his own testimony. Thus, these findings are supported by substantial evidence.

Grant's argument necessarily becomes that the ALJ should have given more significance to the records he cited. The Court has reviewed these records. As to Grant's claim that he consistently reported worsening pain to medical providers for years, the Court notes that these reports were to a primary care physician. Grant's complaints to this doctor appear on records from visits in which his chief complaint was "Follow up for Hypertension." (Tr. at 413). In each of those records, the doctor noted a secondary complaint of "Degenerative Disc Disease of Lumbar Spine" and stated: "Has chronic low back pain. Pain pills help him work. Reports bilat[eral] hand tremor pain. Has seen neurosurgeon in [Birmingham] who discussed lumbar surgery…. Says that pain relief is not always as good as it was initially." *Id.* This identical statement appears on each of the records cited above. The Court has also reviewed the imaging studies Grant cites and notes that they do indicate a worsening condition. *Compare* (Tr. at 1160) (2003 MRI study noting,

among other things, a "moderately prominent central herniated disk at L4-5 with small central herniated disk at L2-3") *with* (Tr. 401) (2016 MRI study noting, among other things, a "severe disc desiccation at L4-5 with grade 4 tear along the anterior margin of the annulus.").

Given these records, the Court has no trouble concluding that Grant's condition and associated pain have worsened over time. However, the ALJ did not determine that Grant was pain free or that he was unlimited in the work he could do. As noted above, she determined that his condition restricted him to sedentary work with certain limitations, i.e., occasional postural maneuvers. The records Grant cites do not contradict the ALJ's findings in that regard, and Grant has not explained how the findings in those records would preclude the sedentary work associated with her RFC determination. Rather, Grant asks this Court to accord more weight to the records he cites. But this would be improper. As noted above, this Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

### B. The ALJ's determination regarding Grant's lifting and carrying abilities is supported by substantial evidence.

Grant next argues that the ALJ's determination regarding his lifting and carrying abilities is not supported by substantial evidence. He notes that he sustained a left humerus fracture in 2021 and concedes that the ALJ took this into

consideration when determining his RFC. However, Grant contends that she again mischaracterized certain evidence in making that finding.

The evidence is undisputed that the fracture required Grant to undergo surgery that involved the use of plates and screws to fix the bone in place. However, the ALJ cited records indicating that the injury, which was to Grant's non-dominant arm, healed appropriately within six to eight months. She further noted that by October 2021, the medical records described "good range of motion of the elbow, the triceps and supination both working very well." (Tr. at 40). To be sure, the ALJ also noted records indicating that, while his median and ulnar nerves were functioning, they were weak; that he reported pain in his thumb; and that he had decreased grip strength in his left hand. *Id.* However, she also cited records indicating that Grant was not compliant with his home exercise plan and cancelled his physical therapy after attending only five sessions. *Id.*

As he did with his previous argument, Grant cites to portions of the record that are more favorable to him. For example, he cites to records indicating reports of an inability to extend his wrist and decreased sensation in his radial nerve. (Doc. 11 at 10-11), citing (Tr. at 701). But the records Grant cites either predate the records cited by the ALJ, i.e., the complaints were closer in time to his surgery, or they are self-reported symptoms. While such records are not irrelevant, they do not undermine the ALJ's determination or suggest that it wasn't based on

substantial evidence. As above, Grant is asking this Court to reweigh the evidence. Again, that would be improper. *Moore*, 405 F.3d at 1211.

### C. The ALJ did not err by relying on Grant's daily activities to support her RFC determination.

Grant next argues that the ALJ erred by relying on his testimony regarding his daily activities. Although he concedes that "an ALJ may consider a claimant's daily activities when evaluating his subjective symptoms," he nevertheless claims that it was improper in his case because, he says, the ALJ mischaracterized his testimony by finding that he could do these activities on a sustained basis. (Doc. 11 at 12), citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir.1997). According to Grant, the ALJ's findings omit testimony about limitations on those activities.

As examples, Grant points to his testimony that he has difficulty sitting and standing for long periods of time; that he takes naps every three to four hours to rest his back; that he has problems going to the restroom; and that while he can do household chores, he has to take breaks every two to five minutes. (Doc. 11 at 13). However, none of these limitations would call the ALJ's RFC determination into question or suggest that it wasn't based on substantial evidence.

Grant's inability to sit and stand for long periods was taken into account with the RFC limitation that he perform sedentary work with "occasional postural maneuvers." In other words, he can stand up and walk around if needs to and then

11

sit back down. As for the naps, the Court notes that there is conflicting evidence in the record. In his Adult Function Report, which Grant submitted on February 18, 2021, he reported that he takes naps every three to four hours on a typical day. (Tr. at 302). However, Grant testified at his hearing that he is "not consistent with having to lay down." (Tr. at 99). When asked to clarify, he testified that he lays down for about 20 to 40 minutes four days out of the week. *Id.* at 100. Grant never elaborated on his difficulty using the bathroom, but at his hearing, he testified that he does get up to use the bathroom when he goes to church. Thus, the ALJ could have found his reported limitations to lack credibility, and it would be improper for this Court to second-guess such a determination.

Nevertheless, all these limitations—including the breaks he takes while doing household chores—are taken into account in the RFC determination. As noted above, the ALJ did not find that Grant was in perfect shape and able to do any job in the economy. Rather, she limited him to sedentary work with certain limitations. As Grant notes in his brief,

> [s]edentary work is defined as work involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(Doc. 11 at 10), citing 20 C.F.R. §404.1567(a). Thus, contrary to Grant's assertions, the ALJ's opinion does reflect that she considered all his testimony along with the medical evidence in making her RFC determination. Grant would have this Court reweigh the evidence and give more credence to the limitations he testified to. But again, this would be improper. *Moore*, 405 F.3d at 1211.

## V. Conclusion

Having reviewed the record and the parties' briefs, the Court concludes that the ALJ properly considered the entire record and provided substantial evidence supporting her assessment of Grant's subjective allegations and his RFC. *See Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."). Accordingly, the Commissioner's decision is **AFFIRMED**.

**DONE** and **ORDERED** March 19, 2025.

                                        **LILES C. BURKE**
                                        UNITED STATES DISTRICT JUDGE